CASE NO. 24-11091-D

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

SAMANTHA MARKLE,

*Plaintiff and Appellant*,

v.

MEGHAN MARKLE,

*Defendant and Appellee.*

---

On Appeal From the United States District Court
For the Middle District of Florida,
Case No. 8:22-cv-00511-CEH-TGW
The Hon. Charlene Edwards Honeywell

---

## APPELLEE'S ANSWERING BRIEF

---

**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
Michael J. Kump
Jonathan Steinsapir
Nicholas C. Soltman
11766 Wilshire Boulevard,
Suite 750
Los Angeles, California 90025
Telephone: 310.566.9800

**BITMAN O'BRIEN & MORAT PLLC**
Ronnie Bitman
610 Crescent Executive Court,
Suite 112
Lake Mary, FL 32746
Telephone: 407.815.3110

*Attorneys for Defendant and Appellee*
*Meghan, The Duchess of Sussex*

**Case No. 11091-D**
**Samantha Markle v. Meghan Markle**

**Certificate of Interested Persons and**
**Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and

Eleventh Circuit Rule 26.1-1, Defendant/Appellee Meghan,

The Duchess of Sussex (erroneously sued as "Meghan Markle"),

discloses the following individuals and entities who may have an

interest in the outcome of this appeal or the case below, or who

otherwise come within the scope of individuals and entities required to

be disclosed pursuant to Eleventh Circuit Rule 26.1-1 or Federal Rule of

Appellate Procedure 26.1:

1. Bitman O'Brien Morat, PLLC (counsel for defendant/appellee)

2. Bitman, Ronnie (counsel for defendant/appellee)

3. Fojo, Ryan (counsel for plaintiff/appellant)

4. Honeywell, Hon. Charlene E. (U.S. District Judge, presiding over this matter in district court)

5. Kinsella Holley Iser Kump Steinsapir, LLP (counsel for defendant/appellee)

6. Kump, Michael J. (counsel for defendant/appellee)

i

7.  <u>Markle, Samantha</u> (plaintiff/appellant)

8.  <u>Sasson, Jamie</u> (counsel for plaintiff/appellant)

9.  <u>Soltman, Nicholas C.</u> (counsel for defendant/appellee)

10. <u>Steinsapir, Jonathan P.</u> (counsel for defendant/appellee)

11. <u>The Duchess of Sussex, Meghan</u> (defendant/appellee—
    erroneously sued as "Meghan Markle" in this matter below)

12. <u>The Ticktin Law Group</u> (counsel for plaintiff/appellant)

13. <u>Ticktin, Peter</u> (counsel for plaintiff/appellant)

14. <u>Wilson, Hon. Thomas G.</u> (U.S. Magistrate Judge, presiding
    over designated proceedings in this matter below)


Dated:  August 30, 2024          Respectfully Submitted:

                                 KINSELLA HOLLEY ISER
                                 KUMP STEINSAPIR LLP

                                 BITMAN O'BRIEN & MORAT PLLC


                                 By: */s/ Michael J. Kump*
                                     Michael J. Kump
                                     Attorneys for Defendant and
                                     Appellee Meghan, The Duchess of
                                     Sussex

## Statement Regarding Oral Argument

The issues presented to and decided by the District Court are based on settled law. The facts and legal arguments are adequately presented in the briefs and record. Thus, oral argument is not essential to the Court's resolution of the merits of the appeal and Appellee does not request it. If the Court believes it will be helpful as to any issues, however, counsel welcomes the opportunity to present oral argument.

# Table of Contents

**Page**

Jurisdictional Statement ................................................................. 1

Statement of the Issues ................................................................. 2

Statement of the Case ................................................................. 3

I.  Course of the Proceedings Below ......................................... 6

    A.  The Parties ................................................................. 6

    B.  Plaintiff's Initial Complaint ...................................... 6

    C.  Plaintiff's First Amended Complaint was Dismissed ........... 6

    D.  Plaintiff's Third Amended Complaint was Dismissed
        With Prejudice ......................................................... 7

II.  Statement of the Facts ....................................................... 9

    A.  Claims Based on the Book *Finding Freedom* ........................ 9

    B.  Claims Based on the CBS Interview ................................. 10

    C.  Claims Based on the Netflix Series ................................. 11

    D.  The District Court Order Dismissing the TAC ................... 11

        1.  Statements by Meghan in the CBS Interview are
            not actionable. ............................................ 12

        2.  Statements by Meghan in the Netflix Series are
            not actionable, either. .................................. 12

        3.  Meghan lacked actual malice in "publishing"
            Bouzy's statements, which suffered from at least
            one additional defect anyway. ....................... 13

        4.  Plaintiff's companion claim for defamation by
            implication fails. .......................................... 15

        5.  Leave to amend would be futile. ..................... 16

    E.  Plaintiff's New Claim on Appeal ................................. 16

III.  Standard of Review ......................................................... 19

Summary of the Argument ......................................................... 21

Argument ................................................................................ 23

i

I.    The Controlling Law on Claims for Defamation by
      Implication ..................................................................... 23

II.   Plaintiff Has Effectively Conceded That the Challenged
      Implications Are Not Defamatory and Waived the Claim ........... 25

III.  The District Court Correctly Held That the Complaint Fails
      to Properly Allege Actual Malice .................................... 28

      A.   Bouzy Is a "Source," and the Standard for Actual
           Malice Is Whether Meghan Had "Obvious Reasons"
           To Doubt *His* Veracity .............................................. 31

      B.   Meghan Included Plaintiff's Denial in the Very Episode
           at Issue ................................................................. 33

      C.   Any Depiction of Plaintiff as an Online Troll Was
           Supported by "Widespread Media Reports" ......................... 36

IV.   Plaintiff's New Defamation by Implication Claim Fails
      Because There is No Juxtaposition and False Statements
      Are Irrelevant .............................................................. 38

V.    The District Court Correctly Held That the Challenged
      Statements Are Not Defamatory As a Matter of Law .................. 40

      A.   The Supposed Implications Are Not Actionable
           Because They Are Opinions Protected by the
           First Amendment ....................................................... 41

           1.   Here, too, the supposed implications—that
                Plaintiff is a "racist troll" who belongs to a
                "hate group"—are protected statements of
                opinion. .......................................................... 42

           2.   The supposed implication of spreading
                "disinformation" (or "misinformation") is also a
                non-actionable opinion. ...................................... 46

      B.   Bouzy's Statement that Plaintiff Was Suspended from
           Twitter Was Substantially True, Irrespective of the
           Basis for the Suspension .............................................. 48

      C.   The District Court Correctly Held That the Claim for
           Defamation by Implication Fails Because the
           Statements at Issue Did Not Concern Plaintiff at All ......... 50

Conclusion ................................................................................ 54

## Table of Citations

**Page(s)**

## Cases

*Akai Custom Guns, LLC v. KKM Precision, Inc.*,
    2023 WL 8449374 (S.D. Fla. 2023) ...................................................... 45

*Am. Civ. Liberties Union of Georgia v. Barnes*,
    168 F.3d 423 (11th Cir. 1999) .............................................................. 32

*Basulto v. Netflix, Inc.*,
    2023 WL 7129970 ......................................................................... 51, 53

*Bongino v. Daily Beast Co., LLC*,
    477 F. Supp. 3d 1310 (S.D. Fla. 2020) ........................................... 41, 42

*Bonner v. City of Prichard, Ala.*,
    661 F.2d 1206 (11th Cir. 1981) ............................................................ 36

*Cape Pubs., Inc. v. Reakes*,
    840 So. 2d 277 (Fla. 5th DCA 2003) .................................................. 48

*Carroll v. TheStreet.com, Inc.*,
    2012 WL 13134547 (S.D. Fla. May 25, 2012) .................................... 10

*Cheng v. Neumann*,
    51 F.4th 438 (1st Cir. 2022) ................................................................ 47

*Coleman v. Grand*,
    523 F. Supp. 3d 244 (E.D.N.Y. 2021) ................................................. 47

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
    406 F. Supp. 3d 1258 (M.D. Ala. 2019) .............................................. 43

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
    6 F.4th 1247 (11th Cir. 2021) ............................................... 19, 28, 38

*Corsi v. Newsmax Media, Inc.*,
    519 F. Supp. 3d 1110 (S.D. Fla. 2021) ......................................... 27, 39

*DeMoya v. Walsh*,
    441 So. 2d 1120 (Fla. 3d DCA 1983) ................................................. 45

*Depree v. Thomas*,
    946 F.2d 784 (11th Cir. 1991) ...................................................... 17, 18

*Diaz v. NBC Universal, Inc.*,
    536 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................. 51

*Dunn v. Air Line Pilots Ass'n*,
    193 F.3d 1185 (11th Cir. 1999) ........................................................ 30

*Florio v. Gallaudet Univ.*,
    619 F. Supp. 3d 36 (D. D.C. 2022) .................................................... 46

*Fodor v. Berglas*,
    1995 WL 505522 (S.D.N.Y. Aug. 24, 1995) ......................................... 37

*Fortson v. Colangelo*,
    434 F. Supp. 2d 1369 (S.D. Fla. 2006) ............................................... 45

*Griffin Indus., Inc. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007) ........................................................ 19

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ....................................................................... 33

*Hay v. Independent Newspapers, Inc.*,
    450 So. 2d 293 (Fla. 2d DCA 1984) ................................................... 45

*Jacoby v. Cables News Network, Inc.*,
    537 F. Supp. 3d 1303 (M.D. Fla. 2021) ................................... 15, 29, 35

*Jankowicz v. Fox News Network, LLC*,
    2024 WL 3510309 (D. Del. July 22, 2024) .......................................... 46

*Jews for Jesus, Inc. v. Rapp*,
    997 So. 2d 1098 (Fla. 2008) ..................................................... *passim*

*Johnson v. City of Fort Lauderdale, Fla.*,
    126 F.3d 1372 (11th Cir. 1997) .......................................................... 9

v

*Karp v. Miami Herald Publ'g Co.*,
    359 So. 2d 580 (Fla. 3d DCA 1978).....................................................23

*Keller v. Miami Herald Pub. Co.*,
    778 F. 2d 711 (11th Cir. 1985)...........................................................50

*Krass v. Obstacle Racing Media, LLC*,
    667 F. Supp. 3d 1177 (N.D. Ga. 2023) ..............................................43

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    838 F.2d 1287 (D.C. Cir. 1988) .........................................................37

*Mac Isaac v. Twitter, Inc.*,
    557 F. Supp. 3d 1251 (S.D. Fla. 2021) ..............................................50

*Masson v. New Yorker Mag., Inc.*,
    501 U.S. 496 (1991) ....................................................................30, 48

*Mercola v. New York Times Co.*,
    2024 WL 551952 (M.D. Fla. Feb. 12, 2024).......................................47

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016)....................................23, 29, 30, 32, 38

*Moore v. Cecil*,
    488 F. Supp. 3d 1144 (N.D. Ala. 2020) .......................................30, 38

*Ozyesilpinar v. Reach PLC*,
    365 So. 3d 453 (Fla. 3rd DCA 2023) ........................................ *passim*

*Parekh v. CBS Corp.*
    820 F. App'x 827 (11th Cir. 2020).....................................................24

*Project Veritas v. Cable News Network, Inc.*,
    591 F. Supp. 3d 1322 (N.D. Ga. 2022)..........................................49, 50

*Project Veritas v. Leland Stanford Junior Univ.*,
    2022 WL 1555047 (W.D. Wash. May 17, 2022).................................47

*Pullum v. Johnson*,
    647 So. 2d 254 (Fla. 1st DCA 1994)...................................................45

*Reed v. Chamblee,*
    2023 WL 6292578 (M.D. Fla. Sept. 27, 2023) .............................. 44, 52

*Rosanova v. Playboy Enterprises, Inc.,*
    580 F.2d 859 (5th Cir. 1978)...................................................... 36, 37

*Salazar-Abreu v. Walt Disney Parks and Resorts U.S., Inc.,*
    277 So. 3d 629 (Fla. 5th DCA 2018) .................................................. 34

*Searcy v. R.J. Reynolds Tobacco Co.,*
    902 F.3d 1342 (11th Cir. 2018)........................................................ 34

*Seminole Tribe of Fla. v. Florida Dep't of Revenue,*
    750 F.3d 1238 (11th Cir. 2014).......................................................... 20

*Skillern v. Georgia Dept. of Corrections,*
    191 F. App'x 847 (11th Cir. 2006)...................................................... 19

*Smith v. Cuban Am. Nat'l Found.,*
    731 So. 2d 702 (Fla. 3d DCA 1999)................................................... 48

*St. Amant v. Thompson,*
    390 U.S. 727 (1968)..................................................................... 31, 36

*Thomas v. Jacksonville Television, Inc.,*
    699 So. 2d 800 (Fla. 1st DCA 1997)........................... 14, 50, 51, 52, 53

*Timson v. Sampson,*
    518 F.3d 870 (11th Cir. 2008)........................................................... 32

*Turner v. Wells,*
    198 F. Supp. 3d 1355 (S.D. Fla. 2016)............................. 24, 27, 41, 46

*Turner v. Wells,*
    879 F.3d 1254 (11th Cir. 2018).................................................. *passim*

*United States v. Campbell,*
    26 F.4th 860 (11th Cir.) ................................................................... 28

*United States v. Corbett,*
    921 F.3d 1032 (11th Cir. 2019).......................................................... 17

vii

*United States v. Gibson,*
   678 F. App'x 823 (11th Cir. 2017)..........................................................9

*Walker v. Jones,*
   10 F.3d 1569 (11th Cir. 1994)............................................................28

## Statutes

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1332(a)(1)......................................................................1

Fla. Stat. § 95.11(4)(g) ...................................................................10

## Other Authorities

First Amendment ............................................................. *passim*

Fed.R.App.P. 11(c) .................................................................. 1, 7, 16

Fed.R.App.P. 28(a)(8)(A) ............................................................. 32

Fed.R.Civ.P. 12(b)(6) ........................................................ 5, 6, 23, 28

-

## Jurisdictional Statement

The District Court had original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (1 Appendix of Record ("AR") 23 ¶ 12.)[1] This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The notice of appeal was timely filed on April 8, 2024, within 30 days of entry of judgment by the District Court for Appellee on March 12, 2024. (1 AR 15 [Dkt. 115, 116]; 5 AR 396 [Notice of Appeal].) The judgment disposed of all claims by Appellant against Appellee. (*See* 5 AR 394.)

---

[1] Record cites are in the format Vol. [*e.g.*, 1, 2, etc.] AR [page number]. All page numbers refer to the pagination in the Appendix. Where appropriate, record cites include a reference to the paragraph number. Cites to Appellant's Opening Brief ("AOB") are to the numbered pages, not the ECF pages. Finally, "Dkt." cites are to district court docket entries that were not included in Appellant's Appendix of Record. *See generally* Aug. 9, 2024 unnumbered docket entry ("Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Middle District of Florida certifies that the record is complete for the purposes of this appeal re: 116 Notice of Appeal. All documents are imaged and available for the USCA to retrieve electronically.").

## Statement of the Issues

This appeal presents one issue. Did the District Court correctly dismiss a defamation by implication claim where:

1.    Plaintiff, a public figure, failed to adequately plead actual malice, absent any allegations that Meghan had obvious reasons to doubt the veracity of a source interviewed in the Netflix Series, whose statements were (a) accompanied by an on-the-record denial from Plaintiff's attorney and (b) supported by prior widespread media reports. (*See infra* pp. 28-38.)

2.    An implicit or express statement that Plaintiff belongs to a hate group spreading disinformation about Meghan is an opinion protected by the First Amendment. (*See infra* pp. 40-48.)

3.    An alleged implication misstating the *reason* for—but not the *fact* of—Plaintiff's suspension from Twitter is protected by the "substantial truth" doctrine. (*See infra* pp. 48-50.)

4.    A reasonable lay viewer, not a hypersensitive putative plaintiff, would have understood allegedly defamatory statements about a group of 83 members not to "concern" any one member. (*See infra* pp. 50-53.)

**Statement of the Case**

For over two years and through the course of three substantial complaints, two full opposition briefs and a sur-reply, and two lengthy oral arguments, Plaintiff's action has been a moving target in search of an actionable claim—all to no avail. Plaintiff initially sued for defamation and defamation by implication arising from a book authored by third parties and a CBS interview of Meghan. Then, when the District Court dismissed with prejudice the claims based on the book, but granted leave to amend as to the claims based on the CBS interview, Plaintiff conjured up a wholly new basis for her defamation claims: the Netflix documentary series *Harry & Meghan*.

Now, on appeal, Plaintiff drops her entire express defamation claim in Count I of the Third Amended Complaint ("TAC") and finally "concedes" that the vast majority of the "Statements from the [CBS] Interview, and the Statements from the [Netflix] Series, Season 1, Episodes 2 and 3, are non-actionable … or opinions and therefore do not support a cause of action for Defamation by Implication." (AOB at 12.)

The entire appeal thus hinges solely on Count II for defamation by implication in the TAC, and in particular, on two statements by a

third party, Christopher Bouzy, during a five-minute segment of Episode Five of the Series. But Plaintiff's wholesale reinvention of her allegations and theories below is, again, to no avail: Plaintiff failed to plead any facts in the TAC supporting actual malice, and none of the express or implied statements are defamatory as a matter of law.

The key premise of Plaintiff's "Summary of Argument" is that "the District Court erred by analyzing the defamatory statements from the [Netflix] Series and the [CBS] Interview individually" and not "in context." (AOB at 9.) But Plaintiff is wrong. Plaintiff ignores that the full context of the five-minute clip consists not only of spoken words on screen, but also video footage of numerous printed items, such as headlines, tweets and social media posts by other unnamed users. The District Court considered "both the transcript and footage" of Episode Five "in full," including the "visual elements [that] could not be transcribed." (4 AR 342 (citing Dkts. 91, 92).)[2]

---

[2] The complete transcript of Bouzy's statements in the Netflix Series plus the transcription of the video footage, which is part of the record, is set forth in Appendix 1 at pages 55-60 *infra*.

4

As the District Court found, and as shown below, (1) Plaintiff's TAC completely failed to plead actual malice as required for claims of defamation and defamation by implication. *Turner v. Wells*, 879 F.3d 1254, 1273-74 (11th Cir. 2018) (affirming Rule 12(b)(6) dismissal of claims for defamation and defamation by implication). In addition, as the District Court correctly held, (2) Bouzy's statements and the alleged implications thereof are not defamatory as a matter of law because they are "not readily capable of being proven true or false." *Turner,* 879 F.3d at 1264. And further, the alleged implications are not actionable because they are in some instances (3) substantially true and/or (4) not "of and concerning" Plaintiff.

## I.    Course of the Proceedings Below

### A.    The Parties

Meghan, The Duchess of Sussex ("Meghan"), is an American actress, philanthropist and mother married to Prince Henry of Wales (also known as Prince Harry). (1 AR 134 ¶ 5 [Third Amended Complaint ("TAC")].) Plaintiff Samantha Markle is her half-sister on their father's side. (*Id.* ¶ 6.) Plaintiff's operative complaint alleges that the two were "very close" despite "their 17-year difference in age." (*Id.* ¶ 7.) But "Meg and [her mother] left when she was two" (3 AR 236 [Netflix series transcript]), and the parties have not seen each other since "Plaintiff's college graduation in 2008" (1 AR 27 ¶ 25.b [Complaint]).

### B.    Plaintiff's Initial Complaint

Plaintiff filed her initial Complaint in March 2022 asserting claims for defamation and defamation by implication. (1 AR 18-32.) Meghan's responsive pleading was a Rule 12(b)(6) motion. (1 AR 33-59.)

### C.    Plaintiff's First Amended Complaint was Dismissed

Plaintiff mooted Meghan's Rule 12(b)(6) motion in June 2022 by filing her First Amended Complaint ("FAC"), which again included a defamation claim but dropped the claim for defamation by implication in favor of injurious falsehood. (1 AR 60-73.) Plaintiff next moved to

6

disqualify District Judge Honeywell based on the appointing president (Dkt. 33); that motion was denied four days later (Dkt. 36).

Meghan then moved to dismiss the FAC. (1 AR 74-100.) After conducting lengthy oral argument on the motion (Dkt. 67), on March 30, 2023 the District Court issued a 32-page order granting Meghan's motion in full ("the Order"). (1 AR 101-132).

The Order questioned Plaintiff's ability to state a defamation claim based on Meghan's statements in the CBS interview, but gave Plaintiff "one final opportunity" to replead if she so chose (1 AR 120), with a warning to "be mindful of Rule 11" in "deciding whether to replead any of the claims relating to the CBS interview" (1 AR 120 n.6). The District Court also dismissed the claim for injurious falsehood without prejudice. (1 AR 131.)

## D.    Plaintiff's Third Amended Complaint was Dismissed With Prejudice

Although the Order did *not* give Plaintiff leave to add an entirely new defamation claim,[3] Plaintiff's April 2023 TAC added claims based

---

[3] Because the statements in the Series suffered from the same infirmities as the statements in the CBS interview, Meghan requested that the District Court address them on the merits. (2 AR 163-64 n.3.)

on the December 2022 Netflix documentary series *Harry & Meghan* (the "Series"). (*See* 1 AR 142-45 ¶ 49.)

The TAC also swapped the injurious falsehood claim for a new defamation by implication claim, this one premised on the implication that Plaintiff was a "greedy and dishonest opportunist … attempting to cash-in [sic] on her sister's success and fame." (1 AR 147 ¶ 58; *see* 1 AR 149-51 ¶¶ 74-82 [defamation by implication count].) Meghan moved to dismiss this claim, too. (2 AR 161-63, 175.)

For her part, Plaintiff did not just oppose Meghan's motion (4 AR 304-22); she also filed a sur-reply (4 AR 329-34) in response to Meghan's reply brief (Supp. Appendix of Record ("SAR") 2-10). The Court then conducted a lengthy oral argument in person in November 2023 (5 AR 399 [transcript]) and on March 12, 2024 granted Meghan's motion to dismiss with prejudice (4 AR 335-92). This appeal followed.

---

[motion to dismiss TAC]; *see generally* 4 AR 362 n.12 [order dismissing TAC].)

## II.    Statement of the Facts

It is axiomatic that "[c]ounsel's statements are not evidence."

*United States v. Gibson*, 678 F. App'x 823, 830 (11th Cir. 2017) (citing

*United States v. Smith*, 918 F.2d 1551, 1561 (11th Cir. 1990)). Nor is the

Court "obligated to cull the record ourselves in search of facts not

included in the statements of fact." *Johnson v. City of Fort Lauderdale,*

*Fla.*, 126 F.3d 1372, 1373 (11th Cir. 1997).

Accordingly, the summary below is drawn from the pleadings and

judicially noticed materials.

### A.    Claims Based on the Book *Finding Freedom*

According to Plaintiff's complaints, "during their childhood,

Meghan was very close to her older sister despite their 17-year

difference in age" (1 AR 134 ¶ 7), but when they got older, "the two had

stopped visiting, though there were no bad feelings between them"

(*id.* ¶ 8). But Plaintiff alleged that "once Meghan met and began dating

Prince Harry Meghan became hostile to Samantha" and her

"relationship with Samantha became estranged." (1 AR 135 ¶ 9.)

Plaintiff's original complaint arose out of statements in

Omid Scobie and Carolyn Durand's book *Finding Freedom*, which she

attributed to Meghan's then-press team. (*See, e.g.*, 1 AR 20 ¶¶ 6-7

9

[Complaint].) The most immediate problem was that the March 2022 Complaint (1 AR 18) challenged a December 2018 email (1 AR 25 ¶ 23), but Florida has a two-year statute of limitations for defamation, Fla. Stat. § 95.11(4)(g), with no "'discovery rule,'" *Carroll v. TheStreet.com, Inc.*, 2012 WL 13134547, at *5 (S.D. Fla. May 25, 2012). Not surprisingly, the Court dismissed with prejudice the claims in the FAC "based on the contents of the book *Finding Freedom*." (1 AR 131.)

## B.    Claims Based on the CBS Interview

The other focus of the original Complaint and all pleadings thereafter was a March 7, 2021 CBS "'Primetime Special' … featuring Oprah Winfrey interviewing Meghan and Prince Harry." (1 AR 29 ¶ 29.) Plaintiff took issue with three statements by Meghan in the CBS interview: "(1) she was 'an only child'; (2) she last saw the Plaintiff 'at least 18, 19 years ago and before that, 10 years before that'; and (3) Plaintiff only changed her name to Markle in her early 50s when Meghan started dating Prince Harry." (1 AR 29-30 ¶ 29.)

As noted above, the District Court dismissed claims in the FAC based on the CBS interview with leave to amend. (1 AR 131.)

### C.    Claims Based on the Netflix Series

The TAC not only attempted to replead a defamation claim based on the CBS interview; it also pivoted to a slew of statements in the Netflix Series. Notably, none of the statements by Meghan in the Series are directly at issue in this appeal. Rather, Plaintiff takes issue with several statements by third party Christopher Bouzy, described (incorrectly) as an employee of "Bot Sentinel [who] was retained by Meghan for the Series." (1 AR 143 ¶ 49.d [TAC].) (In fact, Bouzy is the "Founder and CEO" of Bot Sentinel (3 AR 289), and denied "any financial relationship with Harry and Meghan" (2 AR 167 n.6).)

Included as Appendix 1 at pages 55-60 to this Brief is the transcript of the five-minute segment (the "Segment") in the 49-minute Episode Five of the Series, including the statements by Bouzy challenged in the TAC (which are underlined), as well as the surrounding headlines and social media posts.

### D.    The District Court Order Dismissing the TAC

In a thorough 58-page order based on the District Court's review of "both the transcript and footage of Episode Five," as necessary to consider the "visual elements of the episode [that] could not be transcribed" (4 AR 341-42), the District Court carefully explained

11

why none of the 18+ statements at issue in the TAC were actionable.

Specifically, the District Court found:

> As to the defamation claims, each and every statement is
> non-actionable, either because [1] it is a protected opinion,
> [2] substantially true based on judicially noticed evidence,
> [3] not capable of being considered defamatory, or
> [4] because Plaintiff is precluded from meeting the actual
> malice standard (because the statement in question was
> presented together with Plaintiff's version of events).
> Therefore, the defamation claims in Count One (based on the
> CBS Interview and the Netflix Series) will be dismissed with
> prejudice.

(4 AR 343-44 (brackets added).)

## 1.    Statements by Meghan in the CBS Interview are not actionable.

First, the District Court held that each of Meghan's statements in

the CBS interview "is protected from suit either as a pure opinion,

because it is substantially true based on judicially noticed materials,

or based on Plaintiff's failure to plausibly allege that they are

defamatory in the first place." (4 AR 349.)

## 2.    Statements by Meghan in the Netflix Series are not actionable, either.

Second, the District Court "separate[d] the Netflix statements into

two groups: those said by [Meghan], and those said by Christopher

Bouzy, a non-party interviewed in the Series." (4 AR 362.) As already

12

noted, the statements by Meghan are not challenged on appeal. (AOB at 12.) But the District Court found that they were either not defamatory, substantially true, or lacked actual malice. (4 AR 362-73.)

### 3. Meghan lacked actual malice in "publishing" Bouzy's statements, which suffered from at least one additional defect anyway.

Third, turning to the statements by Bouzy, the District Court held that "each statement [was] also non-actionable for at least one other reason beyond Plaintiff's failure to allege actual malice." (4 AR 385.) In particular, Statement #8[4] ("So this is not your everyday trolling … It's insane. And it was done by people who were just not the typical quote-unquote trolls. These are housewives, middle-aged Caucasian women" (3 AR 289-90)) did not "identify Plaintiff as the subject of the statement," could not be "objectively prove[d] or disprove[d]," and did not involve an allegation of "actual malice." (4 AR 376.)

Statements #9 and #10 ("Samantha Markle was part of the group that was putting out … disinformation …. How can the half-sister of

---

[4] All statement numbers refer to the numbers in the District Court's order dismissing the TAC. (4 AR 335-92.)

Meghan be part of a hate group?" (3 AR 291)) were "protected opinion" in that neither could be "empirically verified or falsified." (4 AR 382.)

Statement #11 (decrying the "number of British journalists interacting with and amplifying the hate" (3 AR 292)) was not by Bouzy or Meghan.[5] (4 AR 376.)

Statements #12-14 ("For the main hate accounts, their primary motive is monetizing this stuff. But the secondary accounts, it's about hatred. It's about … race" (3 AR 292)) failed as a matter of Florida law, under which members of a group "composed of twenty-five or more members … cannot show the statements were 'of and concerning' them." (4 AR 379 (quoting *Thomas v. Jacksonville Television, Inc.,* 699 So. 2d 800, 805 (Fla. 1st DCA 1997)).)

Statement #15 ("there would be derogatory terms where they would use the N-word on tweets" (3 AR 293)) was dismissed for the same reason: "it [was] not plausibly 'of and concerning' [Plaintiff]." (4 AR 380.)

---

[5] The District Court noted "[t]hat this statement was included in the operative complaint is perplexing and suggests haste, a misunderstanding of the law, or a lack of diligence on the part of Plaintiff's counsel." (4 AR 376.)

Finally, it was "exceedingly clear that Plaintiff [had] fail[ed] to plead actual malice" as to Statement #18 ("Samantha had her account suspended and then we actually sent Twitter a list because she had, like, 11 additional accounts" (3 AR 291)), because the Series expressly quoted Plaintiff's own attorney's denial. (4 AR 383 (citing *Jacoby v. Cables News Network, Inc.,* 537 F. Supp. 3d 1303, 1312 (M.D. Fla. 2021)).) Regardless, that statement was "substantially true because Plaintiff's account was suspended, by her own admission." (*Id.*)

Alternatively, the District Court held that every single claim based on Bouzy's statements in the Series "are due to be dismissed for the fact that Plaintiff fail[ed] to plausibly plead actual malice." (4 AR 384.) "Malice" in the "context" of the First Amendment "refers to the truth, not to Plaintiff," but "none of Plaintiff's background allegations plausibly allege that Defendant had serious doubts about Bouzy's statements or knew that they were false." (4 AR 384-85.)

### 4.    Plaintiff's companion claim for defamation by implication fails.

Fourth, the District Court held that Plaintiff's defamation by implication claim failed "for a simple reason. She fails to identify the literally true facts" that Meghan "juxtapos[ed]" or "omitt[ed]." (4 AR

15

387-88.) A "second (but no less important reason) that Count Two fail[ed]" was that the Court had "already found that each of the statements on which the defamation claims were based are non-actionable." (4 AR 389.)

### 5.    Leave to amend would be futile.

Finally, the District Court held that further leave to amend would be futile. "Plaintiff has been given several opportunities to amend, along with guidance and a reminder to be mindful of Rule 11 (Doc. 70 at 20 [1 AR 120] n.6). Nevertheless, Plaintiff's amendments were sparse (though she added a number of deficient claims based on a new publication), often contradictory or unsupported by authority whatsoever, and largely failed to cure deficiencies identified in the Court's previous order (as to the interview claims)." (4 AR 390 (brackets added).)

### E.    Plaintiff's New Claim on Appeal

Plaintiff's opening appeal brief is less an argument regarding the sufficiency of the TAC than a disguised *Fourth* Amended Complaint. That is, Plaintiff presents on appeal a new convoluted claim for defamation by implication which bears no resemblance to Count II of the TAC dismissed by the District Court. It is axiomatic that

"specific factual and legal argumentation at every stage of ...

proceedings" is "importan[t]" to preserving issues on appeal.

*United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019). On this

basis alone, the District Court's ruling should be affirmed. *See Depree v.*

*Thomas*, 946 F.2d 784, 793 (11th Cir. 1991) ("We have long held that an

issue not raised in the district court and raised for the first time in an

appeal will not be considered by this court.").

Specifically, Plaintiff now argues the defamatory implication is

that she "is a racist troll" and a member of the "hate group" "harassing

and attacking Meghan online" (AOB at 14, 21), whose Twitter "account

was suspended for disinformation about Meghan" (AOB at 28). Plaintiff

claims this was implied by the following statements from the Series:

(1) two allegedly *false* statements[6] (AOB at 17-18); (2) two *true*

statements about the status of Plaintiff's Twitter accounts (which

Plaintiff alleged in her TAC were false) that Plaintiff now argues

---

[6] Statement #9 (Plaintiff was "part of [a] group that was putting out a
lot of this disinformation") and the rhetorical question in Statement #10
("we were baffled by this … how can the half-sister of Meghan be part of
a hate group?") (AOB at 17-18).

17

created a defamatory implication by omitting facts[7] (AOB at 18-21); and

(3) 15 allegedly *true* statements, some of which were not identified in

the TAC, none of which were identified as true in the TAC, and *none* of

which are identified specifically in the opening appeal brief (AOB at 21-

23). But, as explained, these arguments were not raised below and

therefore should not be considered on appeal. *Depree*, 946 F. 2d at 793.

---

[7] Statement #18 ("Samantha had her account suspended, and then we actually sent Twitter a list because she had, like, 11 additional accounts") (AOB at 18-21).

## III.  Standard of Review

This Court reviews *de novo* the dismissal of a complaint for failure to state a claim. *Turner*, 879 F.3d at 1262. While the Court must accept well-pleaded allegations as true, "conclusory allegations" and "legal conclusions" are not entitled to be assumed true. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 2453 (2022). The Court also need not accept the truth of allegations that are either directly contradicted within the complaint itself, *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007), or absent from the complaint altogether, *see, e.g.*, *Skillern v. Georgia Dept. of Corrections*, 191 F. App'x 847, 850 n.4 (11th Cir. 2006) ("To the extent Skillern is asserting additional allegations in his reply brief that he did not allege in his complaint, these new allegations are not relevant to our review of the district court's dismissal of his complaint.").

Whether challenged statements constitute defamation by implication, and whether the implication "qualifies as an opinion," are questions of law to be decided by the Court. *Turner*, 879 F.3d at 1269.

The Court "may affirm the dismissal of a complaint on any ground supported by the record even if that ground was not considered by the district court." *Seminole Tribe of Fla. v. Florida Dep't of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014).

## Summary of the Argument

In the TAC, Plaintiff attacked as false all cited statements by Meghan and third party Christopher Bouzy, including his statements that her Twitter account was suspended and he sent Twitter a list of 11 additional accounts. Now she argues these same statements were *true*, but falsely *implied* she "is a racist troll" and a member of the "hate group" "harassing and attacking Meghan online and spreading disinformation." (AOB at 14, 21.) But litigation is not a game of Whac-A-Mole where litigants can toggle between "true" and "false" to avoid the lower court's rationale (*i.e.*, the ruling that Plaintiff failed to state a claim for defamation by implication because she consistently alleged that *all* the alleged statements were false). (4 AR 387.) The Court therefore need not even address these issues.

That said, should the Court choose to address them, Plaintiff's bad faith tactics are for naught: Each of the challenged implications in the opening appeal brief is nonactionable for two or more reasons. First, the District Court was correct that actual malice was absolutely lacking here. There is no claim *Meghan* harbored serious doubts about the basis for Bouzy's on-camera statements, as required for her to be liable for

the statements of a source. Moreover, the Series included in the very episode at issue Plaintiff's express denial that her Twitter account was suspended. And any depiction of Plaintiff as an online troll was supported by "widespread media reports," thereby defeating actual malice.

Second, the opening appeal brief fails to address, let alone rebut, the District Court's ruling that Bouzy's characterization of Plaintiff as "part of" the "hate group" that "was putting out … disinformation" about Meghan was protected opinion because neither term or phrase can be empirically verified or falsified. (4 AR 382.) Likewise, a person's alleged status as a "racist troll" is a nonactionable opinion. *See* O*zyesilpinar v. Reach PLC*, 365 So. 3d 453, 460 (Fla. 3rd DCA 2023).

Third, it is substantially true that Plaintiff *was* suspended from Twitter; the particular *form* of disinformation for which she was suspended does not change the gist of the statement.

Finally, even if the statements were defamatory, statements about 83 members of a group are, by definition, not "of and concerning" any one member.

The District Court should be affirmed.

22

## Argument

Pretrial dismissal is particularly appropriate and necessary in defamation cases because of the "chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978) (per curiam). As this Court has explained, "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (affirming Rule 12(b)(6) dismissal of defamation claim).

## I. The Controlling Law on Claims for Defamation by Implication

Plaintiff's appeal abandons her Count I for defamation and relies solely on Count II for defamation by implication. "[D]efamation by implication is a well-recognized species of defamation that is subsumed within the tort of defamation." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008). Any implied statement therefore must meet the following requirements for defamation under Florida law: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public

figure; (4) actual damages; and (5) the statement must be defamatory. *Turner*, 879 F.3d at 1262 (citing *Rapp*, 997 So. 2d at 1106).

Unlike defamation, which hinges on "the express words" in the statement, "[d]efamation by implication is 'premised not on direct statements but on false suggestions, impressions and implications arising from *otherwise truthful statements.*'" O*zyesilpinar*, 365 So. 3d at 460 (emphasis added). "Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts ...." *Rapp*, 997 So. 2d at 1106 (internal quotation omitted).

The challenged statements and implications are based on a "reasonable person's perception of the entirety of" the Series. *Turner*, 879 F.3d at 1270 (quoting *Turner v. Wells*, 198 F. Supp. 3d 1355, 1376 (S.D. Fla. 2016)). Whether statements constitute defamation by implication under Florida law turns on the context in which that statement was made. *Parekh v. CBS Corp*. 820 F. App'x 827, 835 (11th Cir. 2020) ("Mr. Parekh argues that including pictures of them together created a false, defamatory implication that he was still affiliated with

Ms. Deokaran. But the pictures must also be viewed in the context of the entire news report, which makes clear that they are no longer together.").

## II.    Plaintiff Has Effectively Conceded That the Challenged Implications Are Not Defamatory and Waived the Claim

Plaintiff's TAC focused on Count I for express defamation, which requires that the challenged statements be false. *See Rapp*, 997 So. 2d at 1106. Plaintiff's Count II for defamation by implication was largely an afterthought based on precisely the same alleged false statements as the defamation claim. (1 AR 149-51 ¶¶ 74-82.)

The District Court held that Count II failed to adequately state a claim for defamation by implication "for a simple reason. She fails to identify the literally true facts that would serve as the basis for such a claim." (4 AR 387.) The Court based its dismissal on the TAC's allegations, *e.g.*, that "[a]ll the false remarks in the Oprah Winfrey Interview and Netflix Series around Samantha were false, whether said directly by Meghan or others at her obeyance." (1 AR 147 ¶ 59.)

The District Court thus held that Plaintiff's "complaint logically precludes a defamation by implication claim as … she fails to specify how Defendant has either juxtaposed facts in order to imply a

defamatory connection between them or omitted facts in a way that creates a defamatory implication." (4 AR 387-88 (internal quotations and citations omitted).)

To avoid this fatal defect, Plaintiff's opening appeal brief goes in search of a "true" statement in the Series upon which to base the defamation by implication claim. Although this requires Plaintiff do a full 180 degree reversal, Plaintiff lands on two statements that she *now* contends are true but alleged in the TAC were false: (1) "Samantha had her account suspended" and (2) "And then we actually sent Twitter a list because she had, like, 11 additional accounts." (AOB at 18.)

Plaintiff argues the first "true" statement omitted that "[t]he suspension of her account … in reality, was a short 'freeze' because of Samantha's endorsement of Ivermectin." (AOB at 19.) And she argues the second "true" statement omitted that "Samantha's Twitter account was hacked and false accounts were created *in her name*[,] … *[s]ome of which* may have disseminated disinformation about Meghan and Prince Harry." (AOB at 20 (emphasis added).) Taken together, Plaintiff argues these statements imply (1) "she is a racist troll who has numerous accounts on Twitter solely for the purpose of harming Meghan" (AOB at

14) and (2) has had her account "suspended for disinformation about Meghan" (AOB at 28).

But the new implications identified in the opening brief are no better than her failed allegations in the TAC. Specifically, these two alleged implications are no different from the two *express* statements[8] the District Court correctly held are "protected opinion" and therefore "non-actionable." (4 AR 382.) "[N]either statement can be empirically verified or falsified." (*Id.* (citing *Turner*, 198 F. Supp. 3d at 1370; *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. 4th DCA 1973).) And, as one court has held, if a defamation claim fails to establish one or more common elements with the companion claim, then "the bases [ ] supporting dismissal of [the] defamation … claim[ ] likewise mandate dismissal of [the] defamation by implication claim[ ]." *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021) (actual malice and publication elements missing).

By choosing not to appeal the District Court's dismissal of Count I (express defamation), Plaintiff has effectively conceded that the two

---

[8] Specifically, Statement #9 ("Samantha Markle was part of the group that was putting out a lot of this disinformation") and question #10 ("how can the half-sister of Meghan be part of a hate group?").

alleged implications upon which she now bases her claim for defamation by implication are *not* defamatory as a matter of law. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir.), *cert. denied,* 143 S. Ct. 95 (2022) (the "failure to raise an issue in an initial brief on direct appeal should be treated as a forfeiture of the issue"). This Court has "repeatedly held that 'an issue not raised in the district court and raised for the first time in an appeal will not be considered.'" *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (internal quotation omitted). The same principle applies here, and therefore, Plaintiff has waived her claim for defamation by implication.

## III. The District Court Correctly Held That the Complaint Fails to Properly Allege Actual Malice

The District Court correctly ruled that the TAC utterly fails to allege that Meghan published the statements challenged in the Series with the requisite state of mind. The Eleventh Circuit regularly affirms Rule 12(b)(6) dismissals where, as here, the complaint fails to plead facts that support the reasonable inference that defendant made statements with actual malice. *See, e.g.*, *Coral Ridge*, 6 F.4th at 1252 (ministry failed to plausibly allege nonprofit ministry acted with actual malice in designating ministry as a "hate group"); *Turner*, 879 F.3d at

28

1273-74 (coach failed to plausibly allege law firm that prepared report acted with actual malice); *Michel*, 816 F.3d at 702-03.

As a public figure, Plaintiff must establish that Meghan acted with "actual malice" as to each challenged statement.[9] *Turner*, 879 F.3d at 1273 (citing *Nodar v. Galbreath*, 462 So. 2d 803, 806 (Fla. 1984); *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)); *Jacoby*, 537 F. Supp. 3d at 1312 (concluding that defamation by implication claims "should be analyzed under the same actual malice/negligence framework as traditional defamation claims").

In the Eleventh Circuit, the *Twombly / Iqbal* "plausibility pleading standard applies to the actual malice standard in defamation proceedings." *Turner*, 879 F.3d at 1273 (citing *Michel*, 816 F.3d at 702). Thus, to plead actual malice, Plaintiff "must allege facts sufficient to give rise to a reasonable inference that the false statements were made

---

[9] Each of Plaintiff's three filed complaints acknowledged that the challenged statements must have been made with "actual malice." (*See* 1 AR 24, 26-28, 30-31 [Complaint] ¶¶ 17, 25-26, 31, 34, 40; 1 AR 67, 71 [FAC] ¶¶ 37, 65; 1 AR 147, 150 [TAC] ¶¶ 59, 80.) During oral argument on Meghan's motion to dismiss the TAC, Plaintiff's counsel, in response to an inquiry from the District Court, acknowledged that Plaintiff must plead and prove the challenged statements were made with actual malice. (5 AR 422.)

'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (citing *Michel*, 816 F.3d at 702 and quoting *Sullivan*, 376 U.S. at 280). "This is a subjective test, focusing on whether the defendant 'actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false.'" *Id.* (quoting *Michel*, 816 F.3d at 702–03).

The last point is key. Because the focus is on malice *toward the truth* and *not* malice *toward the plaintiff*, "actual malice" is something of a misnomer; it "should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 510 (1991) In fact, "ill-will, improper motive, or personal animosity plays no role in determining whether a defendant acted with actual malice." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999). The question is solely "whether the defendant actually lied about the plaintiff or acted with a reckless disregard for the truth." *Moore v. Cecil*, 488 F. Supp. 3d 1144, 1162 (N.D. Ala. 2020).

30

### A.  Bouzy Is a "Source," and the Standard for Actual Malice Is Whether Meghan Had "Obvious Reasons" To Doubt *His* Veracity

Where, as here, the piece at issue quotes a source, actual malice is lacking unless the publisher had "*obvious* reasons" to doubt the source's "veracity" or "the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (emphasis added). But even if it were true that "Samantha had her account suspended" because she supported Ivermectin (AOB at 18-19), the TAC does not allege that *Meghan* should have harbored serious doubts about Bouzy's on-camera statements. Likewise, even if it were true that Plaintiff herself rejected the racism of the anti-Meghan trolls, the TAC does not allege that *Meghan* should have harbored serious doubts about Bouzy's statements otherwise.

The TAC pleaded no such allegations, and the opening appeal brief makes no such claim. To the contrary, Bouzy is heralded by Plaintiff as "one of the foremost experts on hate groups operating on Twitter" (AOB at 24), an "expert in cyber-bullying and online hate groups" (AOB at 27), and a "professional" (AOB at 28) who "review[s] accounts and investigate[s] sources of disinformation" (AOB at 34). Indeed, Plaintiff describes the report referenced by Bouzy a "thorough"

review of "thousands of Twitter accounts." (AOB at 27.) In short, "[n]o facts alleged in the complaint give rise to an inference" that Bouzy was "as dubious as an unverified anonymous phone call." *Michel*, 816 F.3d at 705. Rather, by Plaintiff's own admission, Meghan had every reason *to* trust him. This is fatal to a claim of actual malice.

The Court need not—and *cannot*—credit Plaintiff's unsupported factual assertions on appeal. While this Court must "accept[ ] the allegations *in the complaint* as true," *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008) (emphasis added), that presumption does not extend to "[u]nsupported assertions in a brief," *Am. Civ. Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 436 (11th Cir. 1999); *see* Fed. R. App. P. 28(a)(8)(A) (briefs must include "citations to the authorities and parts of the record on which the appellant relies").

For example, Plaintiff argues for the first time on appeal that Meghan "failed to do any research as to the veracity of the report by Bot Sentinel, or she knew the report had inaccuracies and published the

report[10] and Christopher Bouzy's statements, nonetheless." (AOB at 18.) Plaintiff also argues that "[i]t can be shown that Meghan knew about the hacking [of Plaintiff's Twitter account], and if she did not, it was discoverable with minimal digging." (AOB at 20-21.) *Both "allegations," which are not in the TAC, must be disregarded.*

Not only is the "failure to investigate before publishing" insufficient "to establish reckless disregard," *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989), but the TAC contains no allegations whatsoever to this effect. Plaintiff's opening brief is not the Fourth Amended Complaint. The new allegations in the opening appeal brief are thus categorically irrelevant.

### B.   Meghan Included Plaintiff's Denial in the Very Episode at Issue

Equally relevant for actual malice purposes, the Series also included Plaintiff's *express* denial. It is axiomatic that "reporting perspectives contrary to the publisher's own should be interpreted as

---

10  Indeed, there is no allegation whatsoever in the TAC that Meghan had any editorial involvement in the report, let alone that she published a Bot Sentinel report.

helping to rebut, not establish, the presence of actual malice." *Turner*, 879 F.3d at 1274 (internal quotation omitted).

Yet Plaintiff *ignores* the prominent on-screen disclaimer in Episode Five of the Series from "Samantha Markle's attorney" stating that her "Twitter account has never been 'suspended' but was instead 'hacked,' resulting in 'imposter accounts' made by third parties to defame his client." (3 AR 292.) The claims that "she was not suspended" and "she was suspended but for a different reason" are fundamentally irreconcilable positions.[11] But regardless, the fact remains that the Series left it for the readers to weigh Bouzy's and Plaintiff's respective explanations.

---

[11] The only reason Plaintiff is not judicially estopped from "making a mockery of justice by inconsistent pleadings," *Salazar-Abreu v. Walt Disney Parks and Resorts U.S., Inc.*, 277 So. 3d 629, 631 (Fla. 5th DCA 2018), is that she did not prevail before the District Court. *See id.* at 633 ("The Eleventh Circuit rule differs from the Florida rule because [this Circuit] does not consider whether the inconsistent claim was successfully asserted in the prior action, [or] whether there was prejudice to the opposing party"); *see generally Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1358 n.7 (11th Cir. 2018) ("In diversity cases, 'the application of the doctrine of judicial estoppel is governed by state law.'").

34

In *Jacoby*, the plaintiff, the owner of a petition circulating company, alleged he had been defamed by an article stating he had "previously pleaded guilty to voter registration fraud" and a second article clarifying he had been charged with felony voter registration fraud but had pleaded guilty to a misdemeanor. 537 F. Supp. 3d at 1312. The district court dismissed the claim for failure to adequately plead actual malice, *id.*, and the Eleventh Circuit affirmed, 2021 WL 5858569 (11th Cir. Dec. 10, 2021).

The first article included comment from a "representative" of the Plaintiff's company: "'This years-old misdemeanor charge had nothing to do with any political campaign or voter, Let The Voters Decide, voter registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible.'" *Jacoby*, 537 F. Supp. 3d at 1312. And the second article also included a separate comment: "'Representatives for [Plaintiff] have repeatedly insisted his misdemeanor plea is not relevant to his political work.'" *Id.* These comments, which were "contrary to the general conclusions reached in the articles," thus "undermine[d] Plaintiff's claims of malice," as this Court ultimately concluded. 2021 WL 5858569, at *5.

The same result follows here: the Series included "information contrary to the general conclusions reached" about the reason for Plaintiff's suspension from Twitter. Thus, at the very least, this undermines any claim of actual malice.

### C. Any Depiction of Plaintiff as an Online Troll Was Supported by "Widespread Media Reports"

Finally, it is well established that "[t]he subjective awareness of probable falsity required *by St. Amants v. Thompson*, 390 U.S. 727, 731 (1968), cannot be found where, as here, the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied." *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 862 (5th Cir. 1978) (parallel cite omitted); *see Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (holding that Fifth Circuit cases decided before 1981 are controlling law in the Eleventh Circuit).

Here, as Meghan established in the motion to dismiss the TAC (2 AR 174 n.8 [Motion]; 3 AR 184-85 n.3 [RJN]), numerous other outlets had earlier labeled Plaintiff a "troll." Plaintiff expressly agreed at oral argument on November 8, 2023 that the District Court could take

"judicial notice of" these and other "previous media reports regarding certain claims in the series …." (4 AR 341.)

For instance, Meghan's Request for Judicial Notice, which the District Court granted, cited a March 12, 2022 article by *Buzzfeed News* entitled "Meghan Markle's Biggest Troll Is Her Half-Sister Samantha." (3 AR 185 n.3.) After "an investigation spanning months," the outlet found "evidence that for the past four years, Samantha has apparently used various Twitter accounts … not just to criticize Meghan but to also propagate and give credibility to damaging and potentially defamatory claims about her half sister." (*Id.*) A *Mercury News* article the same week reported that Plaintiff "floated … the bizarre but long-simmering idea that the Duchess of Sussex faked her two pregnancies." (*Id.*)

Under *Rosanova* and its progeny,[12] the previous media reports regarding Plaintiff's online harassment that were before the District Court—and are before this Court—preclude a claim of actual malice. In *Moore*, for example, the court dismissed plaintiff's defamation

_____

[12] *See, e.g., Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988) (citing *Rosanova* in holding that a publisher was entitled to rely on "previously published report[ ]" from a "reputable source").

claim under *Rosanova*, where plaintiff alleged no facts that defendant had "serious doubts" about the "multiple reports detail[ing] [third-party] allegations" against the plaintiff. *See Moore*, 488 F. Supp. 3d at 1164. And, as noted above, Meghan did not have just *one* source; she had several. *Cf. Fodor v. Berglas*, 1995 WL 505522, at *5 (S.D.N.Y. Aug. 24, 1995) (no actual malice where defendant "bas[ed] his conclusions on only *one* source, namely an article previously published in New York Magazine") (emphasis added). The TAC therefore failed to plead actual malice as a matter of law. *See Coral Ridge*, 6 F.4th at 1252; *Turner,* 879 F.3d at 1273-74*; Michel,* 816 F.3d at 702-03.

## IV. Plaintiff's New Defamation by Implication Claim Fails Because There is No Juxtaposition and False Statements Are Irrelevant

For the first time, Plaintiff relies on 15 allegedly true statements, plus two allegedly false statements, to try to state a claim. (AOB at 21.) But Plaintiff's opening appeal brief misapplies the law of defamation by implication in several critical respects.

As in the TAC, Plaintiff parrots the word "juxtaposition," but has never identified any comparison or contrasting (*i.e.*, juxtaposition) beyond the fact that *all* statements, including those 15, were made in

the five-minute Segment. (AOB at 22.) To the contrary, Plaintiff's Count II consisted of nothing more than convoluted metaphors about Meghan's supposed "juxtaposition of lie and fact and the surgically precise omission of truth, that, like the spider and the fly, weaves [Defendant's] false narrative … encapsulating the unsuspected [sic] listener in the gossamer web of fiction." (4 AR 388 (quoting TAC ¶ 75).) Plaintiff failed, therefore, to plead defamation by implication based on juxtaposition.

Even if Plaintiff had pled a juxtaposition-based defamation by implication claim in the TAC, one thing is clear: Such a claim cannot be based on false statements at all, as Plaintiff attempts to do in the opening appeal brief. (AOB at 17-18.) As the Florida Supreme Court has held, "defamation by implication applies in circumstances where *literally true statements* are conveyed in such a way as to create a false impression …." *Rapp*, 997 So. 2d at 1108 (emphasis added). Necessarily, then, *false* statements are per se non-actionable as defamation by implication. *See, e.g.*, *Corsi*, 519 F. Supp. 3d at 1124 ("The Complaint pleads only that Fairbanks' accusations were false—not that they were true and gave a false implication—which requires dismissal.").

Here, as before, Plaintiff's defamation by implication claim hinges on statements she challenges as false. (AOB at 17-18.) But under *Rapp* and *Corsi*, false statements play no role as a matter of law in a defamation by *implication* claim; they only play a role in an *express* defamation claim, the dismissal of which Plaintiff is not appealing.

Plaintiff's misapplication of the law dooms her sole claim for defamation by implication. When the 15 "true" statements and two irrelevant false statements are ignored, all that remains are a couple of true statements about the status of Plaintiff's Twitter accounts, the implications of which are not defamatory as a matter of law.

## V. The District Court Correctly Held That the Challenged Statements Are Not Defamatory As a Matter of Law

The District Court correctly held that each of the challenged express statements[13] and implications from the Series alleged to be defamatory in the TAC was not actionable on two or more grounds—*i.e.*, it was not made with actual malice *and* was (1) a protected opinion,

---

[13] Specifically, Statement #9 ("Samantha Markle was part of the group that was putting out a lot of this disinformation") and the rhetorical question in Statement #10 ("how can the half-sister of Meghan be part of a hate group?").

40

(2) substantially true and/or (3) not "of and concerning" Plaintiff. (4 AR 343-44, 378-79.)

### A. The Supposed Implications Are Not Actionable Because They Are Opinions Protected by the First Amendment

"All of the protections of defamation law that are afforded to the media and private defendants" also apply "to the tort of defamation by implication." *Rapp*, 997 So. 2d at 1108. This includes opinions, which are protected by the First Amendment. *Turner*, 879 F.3d at 1262. In the defamation context, an opinion is a statement that is not "readily capable of being proven true or false." *Id.* at 1264; *see also Turner*, 198 F. Supp. 3d at 1370 (finding a statement that was not "subject to empirical proof" or an "objectively verifiable event" to be a protected opinion).

In *Turner*, for example, the plaintiff alleged that the defendants' "artful drafting in the Report purposefully omitted certain facts and juxtaposed other irrelevant facts, thereby suggesting that Turner personally fostered a culture of bullying within the Dolphins offensive line," including "homophobic taunting." 879 F.3d at 1269–70. The claim "fail[ed] because the Report's conclusion that Coach Turner engaged in

homophobic taunting is a nonactionable opinion"—whether he engaged in "homophobic taunting is subjective and not readily capable of being proven true or false." *Id.* at 1270.

Similarly, in *Bongino*, the plaintiff based his defamation by implication claim on an article that supposedly implied "NRATV dropped him because of his 'quick temper,' 'brash style,' and because he was an 'outspoken defender of President Trump.'" *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1319 (S.D. Fla. 2020). But while the article (like the Series here) did not "juxtapose those snippets to imply they are the reason that NRATV dropped Bongino," the court dismissed the claim for another reason: those "statements are, at the very least, protected statements of pure opinion." *Id.* at 1319–20.

> **1.  Here, too, the supposed implications—that Plaintiff is a "racist troll" who belongs to a "hate group"—are protected statements of opinion.**

Plaintiff's new defamation by implication claim fails for the same reason her express defamation claim failed: The term "hate group"—like other non-actionable terms, such as "fascism," "radical right," and "political Marxist"—is a nonactionable opinion protected by the

First Amendment. *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D. Ala. 2019).

As the Middle District of Alabama reasoned, "the meaning of the term 'hate group' is so 'debatable, loose and varying,' that labeling [plaintiff] as one is 'insusceptible to proof of truth or falsity.'" *Id.* at 1277 (granting 12(b)(6) motion). Calling a collection of individuals a "hate group" is also a "far cry from the objectively verifiable allegation of … being 'a legislative representative of the Communist Party,'" as evidenced by the conflicting definitions of the term "hate group" espoused by the parties, along with the Anti-Defamation League and the FBI. *Id.* (quoting *Buckley v. Littell*, 539 F. 2d 882, 894 (D.C. Cir. 1976)).

Likewise, in *Krass*, the Northern District of Georgia held that a "bully" was in the eye of the beholder, and therefore calling someone a "bully" is non-actionable. *See Krass v. Obstacle Racing Media, LLC*, 667 F. Supp. 3d 1177, 1202 (N.D. Ga. 2023) ("J.C.'s and A.D.'s perceptions about whether they were bullied are 'subjective assessment[s] as to which reasonable minds could differ.'").

43

Here, even assuming that the Series *did* imply Plaintiff was a "racist troll" (AOB at 14), that is a protected opinion because the terms "racist," "troll," and "racist troll" are "not readily capable of being proven true or false," *see Turner*, 879 F.3d at 1264. Indeed, the Florida Court of Appeal recently held that characterizing plaintiff's comments "as a 'racist tirade' is a matter of pure opinion." *Ozyesilpinar*, 365 So. 3d at 460.[14]

The conclusion that the implied terms relied upon by Plaintiff (*e.g.*, "hate group" and "racist") are not defamatory as a matter of law is supported by decisions throughout Florida and the Eleventh Circuit, which have deemed the following phrases to be non-actionable opinions:

- "homophobic taunting," *Turner*, 879 F.3d at 1264;

- "racist tirade," *Ozyesilpinar*, 365 So. 3d at 460;

- "playing for blood money," *Reed v. Chamblee*, 2023 WL 6292578, at *16 (M.D. Fla. Sept. 27, 2023);

---

[14] After the close of briefing on the motion to dismiss the TAC, Meghan filed a Notice of Supplemental Authority bringing the *Ozyesilpinar* case to the attention of the District Court. (SAR 11-15). Her counsel also called attention to the case during oral argument. (5 AR at 414-15, 418.)

- "crook," *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984);

- "drug pusher," *Pullum v. Johnson*, 647 So. 2d 254, 257 (Fla. 1st DCA 1994);

- "thug," *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1380 (S.D. Fla. 2006);

- "scam" and "public opinion fraud," *Akai Custom Guns, LLC v. KKM Precision, Inc.*, --- F. Supp. 3d ----, 2023 WL 8449374, at *13 (S.D. Fla. 2023); and

- "raving maniac" and "raving idiot," *DeMoya v. Walsh*, 441 So. 2d 1120, 1120 (Fla. 3d DCA 1983).

It is immaterial whether the claim is couched as defamation or defamation by implication. *See Ozyesilpinar*, 365 So. 3d at 460 ("As was true for the defamation counts, the phrase 'racist tirade' … is a statement of opinion …. Thus, the [ ] contention that the phrase is defamatory by implication fails."). These terms, and terms like them, are commonplace in today's public discourse, and if they were actionable, the courts would be effectively incapacitated by the deluge of defamation actions that would ensue.

45

Membership in diffuse *online* "groups" is especially vague, much like "the phrase 'face of,'" which "connotes an inherently subjective assessment and is the sort of 'imaginative expression' and 'rhetorical hyperbole' that typifies non-actionable opinion." *Florio v. Gallaudet Univ.*, 619 F. Supp. 3d 36, 46 (D. D.C. 2022). Anti-Meghan online trolls have not created an LLC, a 501(c)(3), or even a Facebook group. There is no formal entity. Does a retweet of a leader suffice? Ten retweets? Direct messaging one? Does following (and being followed) constitute membership? To ask these questions is to answer them: the line drawing here is far too subjective to lend itself to empirical verification. *See Turner*, 879 F.3d at 1264; *Turner*, 198 F. Supp. 3d at 1370.

## 2. The supposed implication of spreading "disinformation" (or "misinformation") is also a non-actionable opinion.

Similarly, every federal court to address the actionability of the terms "misinformation," "disinformation," or "malinformation" has concluded they lack "readily understood precise meaning[s]" and are therefore "opinion." *Jankowicz v. Fox News Network, LLC*, 2024 WL 3510309, at *4 (D. Del. July 22, 2024).

46

In *Cheng v. Neumann*, 51 F.4th 438 (1st Cir. 2022), for example, the plaintiffs argued "that the statements that The Epoch Times 'has promoted anti-vaccine misinformation and ... QAnon' are defamatory." *Id.* at 447. The First Circuit held that these were merely "opinions which reflect subjective judgments about the nature of The Epoch Times' coverage." *Id.*

The Eastern District of New York also held that a Facebook post with "vague, unverifiable allegations as to [defendant's] motives in 'covertly spread[ing] misinformation" was "protected opinion." *Coleman v. Grand*, 523 F. Supp. 3d 244, 265 (E.D.N.Y. 2021). And the Middle District of Florida, in declining "to pick a side in th[e] debate," collected cases in which "[c]ourts have dismissed … defamation claims brought by doctors against media defendants for labeling their vaccine claims as misinformation." *Mercola v. New York Times Co.*, 2024 WL 551952, at *3 (M.D. Fla. Feb. 12, 2024).

Simply put, "the statement that the [Series]… constitutes 'disinformation' is capable of many interpretations and thus cannot be proven true or false." *Project Veritas v. Leland Stanford Junior Univ.*, 2022 WL 1555047, at *7 (W.D. Wash. May 17, 2022). There is no reason

to deviate from this long line of cases when it comes to fake news about

Meghan, as opposed to COVID or political "mis" or "disinformation."

*****

In sum, the statements and implications at issue in the TAC were

non-actionable opinions, as the District Court correctly held.

### B. Bouzy's Statement that Plaintiff Was Suspended from Twitter Was Substantially True, Irrespective of the Basis for the Suspension

Under the First Amendment, it is not enough for a statement to be

false; it must be "*substantially* and *materially* false, not just …

*technically* false." *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 707

(Fla. 3d DCA 1999) (emphasis added). This is the essence of the

substantial truth doctrine: The common law of libel "overlooks minor

inaccuracies," so even a flawed assertion of fact is not actionable as long

as it is "substantial[ly] tru[e]." *Masson,* 501 U.S. at 516; *see, e.g.*,

*Cape Pubs., Inc. v. Reakes*, 840 So. 2d 277, 280 (Fla. 5th DCA 2003)

("Although Reakes did not expressly admit that she broke the law, she

admitted that she had entered a structure without permission, making

Currie's statement substantially true.").

Here, as noted above, there is no longer any dispute that Plaintiff was suspended from Twitter. The only question is whether it was for COVID-related misinformation or Meghan-related misinformation. But the precise misinformation for which a user was suspended does not affect the "gist" of the statement. Any supposed misstatement is therefore protected as substantially true.

*Project Veritas* is instructive. *Project Veritas v. Cable News Network, Inc.*, 591 F. Supp. 3d 1322 (N.D. Ga. 2022). There, the Northern District of Georgia (applying New York law) invoked the "substantial truth" doctrine in dismissing a conservative activist group's defamation by implication claim against CNN for accurately reporting its suspension by Twitter, but getting the reason *for* that suspension wrong. *Id.* at 1332–33. The plaintiff's defamation by implication claim hinged on the distinction between "Twitter has suspended the account of Project Veritas for violating a policy that prohibits [(a)] the *sharing or threat of sharing of private information …* [or] [(b)] *spreading or promoting of misinformation*." *Id.* at 1332 (brackets added). The court held that both formulations "malign[ ] a journalist's professional

reputation," so "the distinction is not enough to make the statement at issue actionable." *Id.*

Here, too, it is no more or less damaging to Plaintiff's reputation to have been suspended for medical misinformation (as determined by the platform) than for Meghan misinformation.

### C. The District Court Correctly Held That the Claim for Defamation by Implication Fails Because the Statements at Issue Did Not Concern Plaintiff at All

Florida law requires that any alleged defamation must be "of and concerning" the plaintiff. *Thomas,* 699 So. 2d at 804. As a result, Plaintiff's claims also fail for a separate, independent reason: Bouzy's statements did not concern her.

Where, as here, a person is not directly named, the "relevant inquiry is whether 'the average person upon reading [the] statements could reasonably have concluded that the plaintiff [ ] was implicated[.]'" *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259 (S.D. Fla. 2021) (quoting *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 389 (Fla. 3d DCA 1982), *aff'd*, 458 So. 2d 239 (Fla. 1984)). That means a "*reasonable* individual." *Keller v. Miami Herald Pub. Co.*, 778 F. 2d 711, 715 (11th Cir. 1985) (emphasis added); *see also Basulto v. Netflix, Inc.*, 2023 WL

7129970, at *21 (S.D. Fla. Sept. 20, 2023 ("the Court must examine how a reasonable and common mind would understand the statements, and it should not give the statements a tortured interpretation") (citing *Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 378 F.2d 377, 381-82 (5th Cir. 1967)).

Relevant here, the Florida courts have adopted and applied the so-called "group libel" doctrine, which holds that when "a group is large, that is, *composed of twenty-five or more members*, courts consistently hold that plaintiffs cannot show the statements were 'of and concerning' them." *Thomas*, 699 So. 2d at 805 (quoting *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990)).

Other federal courts have cited *Thomas* as the law of Florida. *See Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (holding that *Thomas* barred a "putative class" of "approximately four hundred former and current special agents of the USDEA," where two of the named plaintiffs resided in Florida).

Here, the number of group members, *83* members, is more than three times the outer limit recognized by *Thomas*. Thus, the

51

District Court correctly held that the group libel doctrine barred Plaintiff's claim based on Bouzy's statements about hate groups being motivated by money, hatred and race (*i.e.*, Statements #12-14) because the statements did "not specifically reference Plaintiff." (4 AR 379.)

Plaintiff argues that the *Thomas* rule does not apply here because Bouzy mentioned her by name a couple of times in the Segment. (AOB at 23.) But the Middle District of Florida rejected a similar argument in *Reed*. There, the plaintiff argued that although the LIV golf tour included 48 players, it "actually only consists of the smaller group of prominent players [including him] for the purpose of the group libel doctrine." 2023 WL 6292578 at *11. The court, however, held that "the LIV group of golfers at 48 players is too large for Reed to claim that any alleged defamation to LIV equates to defamation against him personally." *Id.* at *12. The same logic applies to Plaintiff.

Not only that; the Episode Five footage itself, which was part of the record at the District Court,[15] is incompatible with the assertion

---

[15] *See* 4 AR 362 ("For Episode Five, video footage and a transcript were submitted, as the episode contained certain images and graphics not amenable to transcription. The Court has reviewed the transcripts and footage.").

that the entire Segment concerned Plaintiff. Notably, the on-screen racist Twitter accounts are blurred out, but Plaintiff's tweets are not blurred. To conclude, as Plaintiff asserts, that a "reasonable and common mind," *Basulto*, 2023 WL 7129970, at *21, would have inferred that she was among the 83 *unnamed* accounts simply because she was mentioned in the same "Segment" is the epitome of "cherry pick[ing] statements … out of context," *Turner*, 879 F.3d at 1267. And certainly, nobody but Plaintiff could believe that the reference to 83 online trolls included all 11 of her Twitter accounts. (AOB at 20.)

The District Court correctly held that the statements at issue were not "of and concerning" Plaintiff. *Thomas*, 699 So. 2d at 805.

## Conclusion

For all the foregoing reasons, it is respectfully submitted that the judgment of the District Court should be affirmed.

Dated:  August 30, 2024          Respectfully Submitted:

KINSELLA HOLLEY ISER
KUMP STEINSAPIR LLP

BITMAN O'BRIEN & MORAT PLLC

By: */s/ Michael J. Kump*
Michael J. Kump
Attorneys for Defendant and
Appellee Meghan, The Duchess of
Sussex

## Appendix 1

| | | |
|---|---|---|
| 00:28:03 | **HEADLINE:**<br>*Online Hate Targeting Prince Harry, Meghan Markle Comes From Small Number Of Users New Report Says* | |
| 00:28:06 | **LOWER THIRD:**<br>*CHRISTOPHER BOUZY Founder and CEO, Bot Sentinel* | CHRISTOPHER BOUZY: Bot Sentinel has looked at everything from QAnon, to MAGA, to COVID disinformation, to climate change disinformation. We've never seen anything quite like this. |
| 00:28:18 | **SOCIAL MEDIA POSTS:**<br>*Way to put your genetic line in the shredder. Nice one Harry*<br><br>*Meghanmarkle you're a nasty fake bitch, your not with him. You're just a fake nasty beard, who…*<br><br>*That's good… I cannot wait for that thing to hit rock bottom and suffer … like what she has done to Her Majesty the Queen … Harry should have left the trash outside!* | |
| … | … | … |
| 00:28:46 | Screen Filling with Tweets | |
| 00:28:49 | | CHRISTOPHER BOUZY: We looked at 114,000 tweets and |

55

| | | we were able to then determine that 70% of the, you know, hateful content came from just 83 accounts and they had a reach of 17 million people. |
|---|---|---|
| 00:28:58 | *70% of Tweets*<br>*83 Accounts*<br>*17 Million Users* | |
| 00:29:08 | | <u>CHRISTOPHER BOUZY: [#8]</u><br><u>So this is not your everyday</u><br><u>trolling.</u> |
| 00:29:10 | **HEADLINE:**<br>*The Fight of Meghan*<br>*Markle's Life*<br>*The duchess's battle with*<br>*tabloids and trolls is about*<br>*more than just her right to*<br>*privacy.* | |
| … | … | … |
| 00:29:34 | | YOUTUBER 1: What is it about Meghan Markle that has driven Prince Harry to not only abandon the family who has always loved him… |
| 00:29:37 | | YOUTUBER 2: In every scenario who's the victim? |
| 00:29:40 | | YOUTUBER 3: Because she separated him from his … |
| 00:29:41 | | <u>CHRISTOPHER BOUZY: [#8</u><br><u>cont'd] And it was done by</u><br><u>people who were just not the</u><br><u>typical [quote, unquote]</u><br><u>"trolls." These are</u><br><u>housewives, middle-aged</u><br><u>Caucasian women, creating</u><br><u>just constant attacks from "go</u><br><u>back to America" to basically,</u> |

|  |  | you know, "why don't you die?" |
|---|---|---|
| … | … | … |
| 00:29:51 | **TWEET:** *Nobody likes you Meghan Markle, not even in Europe. You will never be accepted here. Go back to Crenshaw! #Meghan Markle #ghetto #CrenshawPrincess #PrinceHarry #FreePrinceHarry* | |
| … | … | … |
| 00:30:05 | | <u>CHRISTOPHER BOUZY: [#9] Samantha Markle was part of the group that was putting out a lot of this disinformation. [#18] Samantha had her account suspended, and then we actually sent Twitter a list because she had, like, 11 additional accounts.</u> |
| 00:30:16 | **TWEET**: @MarkleSammy64 everyone follow my here on this page I don't use the markle Sammy 64 anymore.. It's funny because I'm looking at my old stuff but I can't get into this account and don't use it so follow me @TheMarkleSammy  *I abandon the other account* | |

|  | *xx hi! Glad you're here I know I've changed my user handle several times but it's good to have you here and I'll try and be on more regularly. I have to check out your videos I haven't been on in so long and there's been so much going on God can you believe this mess?* |  |
|---|---|---|
| 00:30:20 |  | <u>CHRISTOPHER BOUZY:</u> <u>[#10] And we were baffled by this. You know, how can the half-sister of Meghan be part of a hate group?</u> |
| 00:30:33 | **MIDDLE THIRD:** *According to Samantha Markle's attorney, Samantha's Twitter account has never been "suspended" but was instead "hacked," resulting in "imposter accounts" made by third parties to defame his client.* <br><br> *Source : Newsweek* |  |
| 00:30:39 |  | [#11] H: Perhaps the most troubling part of this is the number of British journalists interacting with and amplifying the hate and the lies. When a lie spreads on social media it's dangerous, of course it is. But when that same lie is given credibility by journalists or publishers |

| | | |
|---|---|---|
| | | it's unethical and as far as I'm concerned an abuse of power. |
| 00:30:59 | **HEADLINE:** *Mainstream royal pundits amplify coordinated hate campaign against Meghan Markle* | |
| 00:31:02 | | <u>CHRISTOPHER BOUZY:</u> <u>[#12] For the main hate accounts their primary motive is monetizing this stuff. [#13] But the secondary accounts, it's about hatred, [#14] it's about, you know, race.</u> |
| … | … | … |
| 00:31:16 | **SOCIAL MEDIA POST:** *The Duke and Duchess of Sussex can't wait to start their Kwanzaa celebrations tomorrow . This will be Lilibet's first Kwanzaa*<br><br>*Yep, I have seen this. She sad that she didn't fit in the black community because of her lighter skin & yet here she is lying through her teeth and supporting the black community and playing victim of racial discrimination. She is nothing but an opportunist.*<br><br>*This is why interracial marriage is no go.* | |

| 00:31:25 | | CHRISTOPHER BOUZY: And the focus was predominantly on Meghan. Comparing her to, for example, you know, a monkey. [#15] And then also there would be derogatory terms where they would use the N-word on tweets. |
|---|---|---|
| … | … | … |
| 00:31:53 | | M: Also I think for people to really understand, you know, when you plant a seed that is so hateful what it can grow into. I mean, just a couple days ago I was going through the manual for our security team at home. |
| … | … | … |
| 00:32:26 | | M: And you're just, like, okay. That's, like, what's actually out in the world because of people creating hate. And I'm a mom. That's my real life, you know? And that's the piece when you see it and you go, you are making people want to kill me. It's not just a tabloid. It's not just some story. You are making me scared, right? |

(3 AR 288-293 [RJN Ex. 3 (Episode Five transcript)]) (bracketed numbers added); *see* 1 AR 143-44 ¶ 49.d, 1 AR 145 ¶ 49.g [TAC].)

**Certificate of Compliance With Type-Volume Limit, Typeface, Typeface Requirements, and Type-Style Requirements**

This Appellee's Answering Brief complies with the word limit of Fed. R. App. P. 32(a)(7)(i) because, excluding exempted portions, the document contains 10,950 words as counted by Microsoft Word's word count tool (including all footnotes, headings, and the like).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook in 14-point font.

Dated:  August 30, 2024          Respectfully Submitted:

KINSELLA HOLLEY ISER
KUMP STEINSAPIR LLP

BITMAN O'BRIEN & MORAT PLLC

By: */s/ Michael J. Kump*
Michael J. Kump
Attorneys for Defendant and
Appellee Meghan, The Duchess of
Sussex

61

## Certificate of Service

I hereby certify that on August 30, 2024, I electronically filed the foregoing **APPELLEE'S ANSWERING BRIEF** with the Clerk of the Court using CM/ECF. I also certify that the foregoing document(s) are being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing. The CM/ECF system will allow counsel to download a copy of this brief.

On the same date, I certify that I caused five physical copies of the foregoing brief to be sent to the Clerk of Court, by Federal Express overnight delivery, for filing with the Court.

By: */s/ Michael J. Kump*
Michael J. Kump
Attorneys for Defendant and
Appellee Meghan, The Duchess of
Sussex

875220

62